IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| 3FORM, INC., a Utah corporation<br><br>Plaintiff,<br><br>v.<br><br>LUMICOR, INC., a Washington corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR ATTORNEY FEES**<br><br>Case No. 2:12-CV-293<br><br>Judge Clark Waddoups |

Defendant Lumicor moves the court pursuant to 35 U.S.C. § 285 for an order that it is entitled to attorney's fees. (ECF No. 74.) Under the Patent Act, in "exceptional cases" the court may award "reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The parties do not dispute that Lumicor was the prevailing party; therefore, the only issue before the court is whether this case is "exceptional." Having considered the parties' briefing and heard oral argument on this matter, the defendants's motion is GRANTED. The court directs Lumicor to submit a supplemental motion in compliance with DUCivR 54-1(f) in support of its "fair estimate" of approximately $250,000 in attorney's fees. The court further directs the parties that it will not entertain claim-by-claim challenges to the reasonableness of fees, but rather will consider the reasonableness of the total fees requested.

## LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The moving party bears the burden of demonstrating, by a

1

preponderance of the evidence, that a case is "exceptional." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014.) An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. In assessing whether a case is exceptional, the court must consider the totality of the circumstances, *id.*, and may consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," *id*. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The court may also "consider the instant case in comparison to the full panoply of patent cases with which it has been involved." *Sarif Biomedical LLC v. Brainlab, Inc.*, 2016 WL 5422479, *3 (D. Del. Sept. 27, 2016). The court does not need to find "material inappropriate conduct, such as willful infringement, fraud, or inequitable conduct related to the matter in litigation." *Octane*, 134 S.Ct. at 1754–55.

## ANALYSIS

The parties argued whether this case qualifies as "exceptional" based almost entirely on the facts of the case, especially whether those facts gave rise to an objectively reasonable basis for 3form's lawsuit and whether 3form subsequently litigated the case in an objectively reasonable manner. The court considers each patent separately.

1. '700 Patent

Lumicor was the first to invent and seek to patent a two-pressure process to produce laminate panels having decorative innerlayers of reeds, twigs, and other materials. (Mem. Dec. 3,

ECF No. 73.) Two years after Lumicor's application to the Patent Office, 3form filed its '700 patent application, which the Patent Office initially rejected as being anticipated by Lumicor's application. To secure the '700 patent from the Patent Office, 3form distinguished Lumicor's process, asserting that Lumicor's process used pressures that were too high to maintain compressible objects, such as plant leaves, petals, twigs, etc., in a natural, unflattened, conformation. In other words, to obtain the '700 patent, 3form unequivocally represented to the Patent Office that panels made by the Lumicor process would not infringe 3form's patent.

Having obtained its '700 patent, as well as a related '068 design patent, 3form filed suit against Lumicor in 2009, asserting that Lumicor's products infringed on 3form's patents. Lumicor countersued, seeking to invalidate 3form's '700 and '068 patents. At the outset of the 2009 litigation, Lumicor pointed out the fatal flaw in 3form's assertion of infringement, namely that 3form obtained its '700 patent precisely because it told the Patent Office that the use of high pressures in Lumicor's process meant that products produced pursuant to Lumicor's patent would *not* infringe on 3form's patent. (Ltr. Dated Dec. 8, 2009; ECF No. 75-2.) Lumicor also explained early in that litigation that it was frivolous or objectively baseless for 3form to secure a patent by arguing to the Patent Office, on the one hand, that its claims do not cover a particular product or process, and then, on the other hand, to assert in subsequent litigation that the distinguished product or process infringes the resulting patent. (Def.'s Mot. 3, ECF No. 74.) 3form was undeterred and proceeded with the 2009 litigation, which was ultimately dismissed because 3form lacked standing. (2:09-cv-990-TS, ECF No. 149-1.) Although 3form had alleged it was the owner of the '700 patent and the '068 patent, it was only a licensee, not the owner of the patents. 3form subsequently purchased the patents and asserted them again in this action.

Lumicor repeated the above factual warnings in this action, including reiterating that the prior Lumicor patent application taught the exact thing shown in 3form's '068 design patent such that the '068 patent was thus plainly invalid. (Answer at 4, 6, ¶¶ 6, 19; ECF No. 9.) In this action, 3form accused every Lumicor twig and reed panel of infringing the '700 patent, regardless of the process used. This specifically included panels made exactly in accordance with Lumicor's prior Patent Application, as well as those made with even higher pressures. (*See* Def.'s MSJ at 25, ECF No. 50 (noting that 3form's damages expert accounted for all Lumicor panels regardless of process used, and that 3form's technical expert opined that every Lumicor reed panel was within the scope of the '700 patent); *see also* Dec. of Dennis Schober ¶ 19-22; ECF No. 50-1 (describing the accused processes).) Thus, in the Patent Office 3form unequivocally stated that panels made by the Lumicor process would not infringe, but in this action 3form accused those same panels of infringing.

Defendants further assert that no reasonable investigation by 3form ever supported the proposition that the '700 patent could be both valid and infringed by Lumicor's accused products. The evidence uniformly showed that every panel made using the process in the Lumicor patent resulted in a substantially natural conformation. Moreover, 3form accused every panel of infringement no matter how Lumicor made it, including panels made with even higher pressures than the 160 psi 3form had told the Patent Office would flatten compressible objects to the point of being two-dimensional.

For its part, 3form argues that the court should not consider whether 3form committed inequitable conduct while prosecuting the '700 patent as part of its attorney's fees analysis. 3form asserts that such conduct was not pled in this action, is not a basis for awarding fees under

4

35 U.S.C. § 285, and Lumicor failed to make a prima facie case of inequitable conduct. (Pl.'s Opp'n 1, ECF No. 87.) 3form misapprehends the standard for an award of attorney's fees. While 3form is correct that a finding of inequitable conduct requires clear and convincing evidence, the court need not make such a finding here. Instead, after *Octane*, the court must find, by a preponderance of the evidence, that the case is exceptional considering the totality of the circumstances. *Id.* at 1751. In its discretion, the court can consider 3form's patent prosecution conduct as it relates to this litigation in its analysis of the totality of the circumstances.

3form also argues that its litigation position was not objectively baseless because its contentions about the validity of the '700 patent and Lumicor's infringement of that patent do not represent an inescapable dichotomy. First, it challenges the notice 3form received from Lumicor in the December 8, 2009 letter. (ECF No. 75-2.) The court has reviewed the letter and finds that it clearly and thoroughly set forth the dichotomy, and that as a result, 3form had an early opportunity to withdraw and resolve the matter. Second, 3form defends its patent prosecution by arguing that it subsequently learned that Lumicor's factory process was "quite different than its *patent* process." (Pl.'s Opp'n 6, ECF No. 87.) Thus, it contends, it had a reasonable basis for its '700 patent prosecution claims that using "the higher pressures taught in Lumicor's patent process could flatten compressible objects to an unnatural appearance." (*Id.*) 3form does not explain how *subsequently* acquired knowledge of Lumicor's factory processes give a justifiable basis for its previous uninformed representations to the patent board.[1]

---

[1] The record reflects that the '700 patent prosecution occurred during the 2004-2006 timeframe. (ECF No. 2.) By comparison, the 2009 litigation began on November 5, 2009, (2:09-cv-990-TS), Lumicor's notice letter was on December 8, 2009, (ECF No. 75-2), and 3form's experts informally inspected Lumicor's manufacturing processes on January 8, 2010, (ECF No. 84-2).

As for how 3form's subsequently acquired knowledge of Lumicor's factory processes justified its infringement allegations in this lawsuit, the court notes that 3form's opposition to Lumicor's attorney's fees motion merely repeats its unsuccessful "compressible objects" arguments in its summary judgment pleadings, which do not explain what makes those arguments objectively reasonable. 3form then goes on to assert that while it distinguished Lumicor's *process* before the patent board, it only accused Lumicor's *products* of infringement. (Pl.'s Opp'n 9, ECF No. 87.) 3form did not limit its accusations, however, to products that allegedly did not follow Lumicor's patent, but instead accused all panels including those made at the '327 pressures. Instead, 3form asserts that because "*Lumicor has produced no evidence that its process ever resulted in a product that anticipated the '700 patent claims*," it had a reasonable basis to assert infringement. (*Id.*) (emphasis added). This argument is unpersuasive.

First, the court does not accept 3form's carefully crafted assertion that it was Lumicor's obligation, rather than 3form's, to investigate the basis of 3form's infringement claims prior to 3form filing its lawsuit, particularly when it accused such a broad range of panels. The Federal Circuit, for its part, stated that "[a]ll of the evidence on record" points to the possibility of making panels with noncompressed natural materials. *3form, Inc. v. Lumicor, Inc.*, 678 Fed.Appx. 1002, 1010 (Fed. Cir. 2017) (unpublished). This implies that either 3form's statements to the Patent Office were false, and perhaps misleading given the dearth of evidence to support its position, or that its litigation position accusing all panels was ill-advised.

---

3form's expert Brent Strong first toured Lumicor's facility on July 13, 2011, and ran the tests that supported his expert opinion on August 2, 2011. (ECF No. 107-1.) There is no evidence in the record of properly conducted testing of Lumicor's process and products prior to 3form's patent prosecution or the 2009 litigation.

Second, upon first being accused of infringement in 2009, Lumicor sent 3form a letter that included sixteen manufacturing plans for the accused products that followed or exceeded the requirements of Lumicor's patent process. (Ltr. Dated Dec. 8, 2009, ECF No. 75-2.) Thus, immediately following the initiation of its lawsuit, 3form obtained information that Lumicor used its patent process to create non-infringing products. This alone refutes 3form's assertion that "Lumicor has produced no evidence that its process ever resulted in a product that anticipated the '700 patent claims." Without having previously performed any of its own tests or investigation, this information—received early on—was sufficient to put 3form on notice of the inescapable dichotomy between the validity of its '700 patent and Lumicor's alleged infringement of that patent.

Finally, 3form challenges Lumicor's characterization of the expert report of Dr. Jeffrey T. Gotro as having been improperly "manufactured" to support the validity of the '700 patent. (Def.'s Mot. 8, ECF No. 74). Lumicor argues that Dr. Gotro's tests support a finding that this case is exceptional and thus warrants attorney's fees because the tests did not follow the teachings of the Lumicor patent, but were offered in support of "the proposition that the '700 patent could be both valid and infringed by Lumicor's accused products." (*Id.* at 5.) In response, 3form argues that Dr. Gotro's tests were never intended to replicate the Lumicor patent in support of that proposition, but instead were intended to "demonstrate that higher temperature and pressures *could* result in deformation from bowing." (Pl.'s Opp'n 12, ECF No. 87.) Dr. Gotro's demonstration, according to 3form's opposition memo, was intended to rebut Lumicor's expert report by Dr. Flinn, whereby Dr. Flinn performed tests that showed that Lumicor's '327 patent process would not flatten compressible objects. (*Id.*) 3form also notes that Dr. Gotro's

report was intended to show the advantages of the '700 patent to avoid bowing caused by resin flow. (*Id.*) 3form also suggests that the court's Memorandum and Decision misunderstood the pressure profile of one of Dr. Gotro's experiments that is alleged to have followed "the methods recited in the Lumicor Application." (*Id.* at 13.)

The court disagrees with 3form's characterizations of its use of Dr. Gotro's report. First, while Dr. Gotro himself may not have intended the purpose for which his report was used, 3form did use it at summary judgment in support of the argument that compressible objects with a substantially natural appearing confirmation are not necessarily present in panels created by the methods of the '327 patent. 3form stated in its opposition to Lumicor's motion for summary judgment:

> And even when the '327 Patent methods yield panels with compressible objects, these objects would not necessarily have a substantially natural appearing confirmation. For example, *both Lumicor's Dennis Schober and 3form's expert Dr. Gotro made PETG panels using the '327 Patent methods*. Although the panels made by Mr. Schober might have resulted in objects with a substantially natural appearing confirmation, *the panels Dr. Gotro made did not.*

(Pl.'s Opp'n to MSJ 10, ECF No. 57) (emphasis added). Arguments such as this demonstrate why the court was required to reject Dr. Gotro's report as unreliable and/or irrelevant—because 3form used it not as it now asserts it was intended, but as evidence that nonconforming products could be produced using the '327 patent methods. Furthermore, 3form must have understood this, because it did not appeal this court's conclusion that Dr. Gotro's tests were inadmissible for this purpose. *3form*, 678 Fed.Appx. at 1010.

Second, not once in 3form's summary judgment briefing did 3form refer to "resin flow." Again, this demonstrates that 3form's use of Dr. Gotro's report was inconsistent with the purpose they now allege it intended. Third, the court's review of Dr. Gotro's experiment (ECF No. 57-2

at 13) confirms that it did not, as still asserted by 3form, follow Lumicor's '327 patent method pressure profiles. Step 2 of Dr. Gotro's experiment, application of "an initial part pressure of 40 psi" is not accompanied by the disclosure of any temperature applied. (*Id.*) By contrast, the '327 patent teaches that when pressure of 40 psi is applied, the "lay-up sandwich" is heated to temperatures of anywhere from 290º to 375º, depending on the material used. ('327 patent ¶¶ 24(e), 28(e), 30(e), 36(e), 37(e); ECF No. 75-1.) In Dr. Gotro's experiment, the first part temperature noted is 195º (identified in step 4), at which time he reports that the pressure was increased to either 120, 160, or 200 psi. (ECF No. 57-2 at 13.) The second part temperature noted is 235º (identified in step 5), after which "the pressure was temporarily released to allow the layup to be moved to the cold press." (*Id.*) This indicates that the initial pressure applied under heat was also the second pressure applied under a higher heat, because only after the higher heat was reached was the "layup" moved to the cold press, where a third application of pressure at either 120, 160, or 200 psi was applied and maintained during cooling. (*Id.*) The court does not believe it was confused about Dr. Gotro not using the Lumicor '327 process at the time of its Memorandum Decision, and it disagrees with 3form now that this method is "not inconsistent with the two-step pressure process disclosed in the Lumicor Application." (Pl. Opp. 13, ECF No. 87.) Thus, it is unpersuaded that it should not consider 3form's use of Dr. Gotro's expert report in its analysis of the totality of the circumstances that may warrant attorney's fees. While the court views the matter somewhat differently than does Lumicor, 3form's use of the report is still an appropriate consideration.

Based on all of the foregoing, the court concludes that the facts of this matter support a finding that 3form's litigation position was objectively unreasonable. From its patent prosecution

through summary judgment on this matter, the court finds that 3form knowingly ignored repeated warnings about the inconsistency of its very weak position. The dichotomy was always inescapable. Although 3form was able to persuade itself that it had a litigation position it was willing to pursue, that does not make its position objectively reasonable. The court was persuaded by Lumicor's reply memorandum addressing 3form's arguments and relies on that reasoning. (Def.'s Reply, ECF No. 89.) Although the court makes no findings of inappropriate conduct, the court finds that it was objectively unreasonable for 3form to distinguish Lumicor's patent before the Patent Office to obtain its own patent, and then to accuse Lumicor products of infringing its new patent without an adequate (if any) investigation into how those products were made. Further, the court finds that it was objectively unreasonable for 3form to use its expert's report during summary judgment for a purpose it now concedes it was not intended. In the court's experience, these findings do make this case stand out exceptionally from others and warrant an award of attorney's fees.

2. <u>'068 Patent</u>

Lumicor argues that the facts related to the '068 patent are similarly egregious. 3form's '068 design patent is very simple—long-stemmed plant material, organized in a generally parallel fashion with some overlap of plant stalks. (ECF No. 2-2.) The record evidence reveals that Lumicor sold many such panels with a variety of grasses long before 3form filed its patent application leading to the '068 patent. Additionally, the evidence reveals that there were prior art teachings that specifically stated the use of reeds in place of grass. One of those prior art teachings was the Lumicor patent application, which made specific reference to the use of reeds. (ECF No. 48-2.) Lumicor further argues that 3form itself disclosed these teachings before the

priority date of its own '068 patent by stating in a press release that it could make such panels having thatch reeds. (ECF No. 73 at 39.) 3form's own expert agreed that substituting reeds in the place of grass in the prior art grass design would result in the same design as claimed in the '068 patent, (Depo. of Ms. Lewis 191:14-21; ECF No. 48-2,) and further, that varying the density was within the scope of ordinary skill.

For its part, 3form argues that the '327 patent was before the Patent Office when it concluded the '068 design was patentable. (Pl.'s Opp'n 14-15, ECF No. 87.) Based on the statutory presumption of patent validity, 3form argues that its infringement position was therefore reasonable. Additionally, 3form asserts that Lumicor mischaracterized its expert's testimony and that the court took the expert's testimony out of context when concluding that a "designer of interlayers" versus an "interior designer choosing panels" would be motivated to combine the teachings of the prior art to create a panel with the same overall visual appearance as the claimed design. (Mem. Dec. 40, ECF No. 73.) As a result, 3form argues that its position regarding Lumicor's infringement of the '068 patent was objectively reasonable. (Def.'s Opp'n 16, ECF No. 87.)

The court again notes that 3form plainly persuaded itself it had a litigation position it was willing to pursue, apparently in good faith. The court disagrees, however, that 3form's litigation position on the '068 patent was objectively reasonable. While the court again makes no finding of inappropriate conduct, 3form's unreasonable litigation position has consequences. The court was again persuaded by Lumicor's reply memorandum addressing 3form's arguments, and the court also relies on that reasoning. (Def.'s Reply, ECF No. 89.) The Federal Circuit, for its part, noted that "3form's expert admitted . . . that she had not read the Schober patent's written

description and had instead only considered the figures," thus resulting in an opinion formed with respect only to figures or illustrations, and not to the "same overall visual appearance as the claimed design." *3form*, 678 Fed.Appx. at 1011. The weakness of the expert's opinion resulted from 3form's choice not to allow her to read the document most relevant to her opinion. This choice is symptomatic of the overall weakness of 3form's litigation position regarding the '068 patent. In the court's experience, these facts make this case stand out exceptionally from others and warrant attorney's fees.

## CONCLUSION

By a preponderance of the evidence, Lumicor has met its burden to show that this is an exceptional case justifying an award of fees. *Octane*, 134 S. Ct. at 1758.

IT IS HEREBY ORDERED that the Motion is GRANTED (ECF No. 74) and Lumicor may submit a supplemental motion in compliance with DUCivR 54-1(f) in support of its "fair estimate" of approximately $250,000 in attorney's fees. The court will not entertain claim-by-claim challenges to the reasonableness of fees, but rather will consider the reasonableness of the total fees requested.

DATED this 28th day of September, 2018.

BY THE COURT:

_____
Hon. Clark Waddoups
U.S. District Judge